UNITED STATES of America,
Plaintiff-Appellee,

v.

ANDERSON COUNTY, TENNESSEE; David O. Bolling, Anderson County Executive; Patsy Stair, Anderson County Trustee; Owen Richardson, Anderson County Property Assessor; Clyde Claiborne; Robert Jolley; Jerry George; Everett Sharp; Charlotte Hayes; Helen Norman; Ernie Phillips, O.V. Leinhart; Kenneth Wallace; Darell Copeland; Jim Hackworth; Jack Keeney & Jack Raines, County Commissioners; Charles Oldham; K.E. Jones; R.R. Tippy; Happy Young & Tom F. Mullinx, Anderson County Board of Equalization; the Board of Equalization of the State of Tennessee and Lamar Alexander; Gentry Crowell; William C. Koch, Jr.; William Snodgrass; Harlan Matthews; Claude Ramsey; Martha Olsen and John E. Sloan, Jr., Defendants-Appellants.

No. 84–5026.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 10, 1985.
Decided May 10, 1985.

W.J. Michael Cody, Atty. Gen. of Tenn., Jim G. Creecy, Charles L. Lewis, Nashville, Tenn., Mike Lawson, Haynes & Associates, Goodlettsville, Tenn., George John Keto (argued), Alvord & Alvord, Washington, D.C., for defendants-appellants.

John J. McCarthy (argued), U.S. Dept. of Justice, Tax Div., David English Carmack, Washington, D.C., John W. Gill, U.S. Atty., Knoxville, Tenn., Glenn L. Archer, Jr. (Lead), Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before ENGEL, KEITH and JONES, Circuit Judges.

KEITH, Circuit Judge.

This is an appeal brought on behalf of Anderson County, Tennessee and the Tennessee State Board of Equalization from a reported decision of the United States District Court for the Eastern District of Tennessee. *See United States v. Anderson County, Tennessee,* 575 F.Supp. 574 (E.D. Tenn.1983). This case concerns the propriety of the imposition of an *ad valorem* real property tax against the Union Carbide Corporation on account of an alleged real property interest in the federally-owned Oak Ridge Reservation. For the reasons set forth below, the decision of the district court, granting summary judgment in favor of the United States, is hereby affirmed.

## FACTS

The United States, through the Department of Energy (DOE) owns 37,185 acres of land in Anderson and Roane Counties, on which government-owned production and research facilities are located. The property was acquired in 1943 and the facilities have continuously performed functions relating to the development of nuclear energy and the production of nuclear weapons components for the national defense. The Y–12 Plant is located on approximately 805 acres in Anderson County and consists of 271 buildings and structures, all of which are owned in fee simple by the United States.

In 1946, Congress authorized the Atomic Energy Commission (the predecessor of DOE) to contract with private and public entities for the research and development of nuclear processes, utilizing government facilities. Union Carbide has operated the Y–12 Plant pursuant to a management contract which authorizes it to manage, operate and maintain the facility in accordance with the directions of the Department of Energy. Union Carbide procures materials, supplies and equipment, although DOE retains the right to furnish any of these items. Payment for such purchases is made by Carbide from funds provided by the government, and title passes directly from the vendor to the government.

Union Carbide performs all the work under the contract with its own employees who numbered approximately 7,000 at the time of this litigation. Union Carbide has no capital investment in the Y–12 Plant. The contract costs include all expenditures under the contract, including the salaries of Carbide employees. In fiscal year 1980, the allowable costs totaled $272,642,000. In addition to the allowable costs under the contract, Carbide receives a negotiated fee for operating, managing and maintaining three industrial facilities, one of which is the Y–12 Plant. It was estimated that Carbide received $1,800,000 for its work at the Y–12 Plant in 1980. The fee is unrelated to the value of the real or personal

property managed or to the amount of weapon components produced. Union Carbide performs no work as a private entrepreneur on behalf of itself or any other private entity at the Y–12 Plant. Union Carbide is not obligated to pay any rent, fee or other consideration in exchange for its presence at, and right of access to, the Y–12 Plant for the purpose of performing its duties under the management contract. The Department of Energy can terminate the contract for any reason upon six months notice.

The contractual relationship is reviewed periodically in accordance with applicable agency regulations. Each review since 1943 has resulted in an extension of Union Carbide's contract. However, effective April 1, 1984, Union Carbide severed its contractual relationship with DOE and was replaced as management contractor by the Martin Marietta Corporation.

## HISTORY OF LITIGATION

In 1980, Anderson County advised both the United States and Union Carbide that it was going to assess an *ad valorem* real property tax against Union Carbide because of an alleged interest in real property consisting of Carbide's possession and use of the federally-owned Y–12 Plant. The United States sought to contest the validity of this tax and filed suit in the United States District Court for the Eastern District of Tennessee. However, on July 23, 1980, the district court ordered the parties to present their claims to the County and State Boards of Equalization. Subsequently, this initial federal action was dismissed.

Union Carbide appealed the tax assessment to the Anderson County Board of Equalization. On September 30, 1980, the Anderson County Board of Equalization ruled that the property tax on Union Carbide's interest in the Y–12 Plant was legal and appraised that interest at $370,000,000. Union Carbide then appealed to the state Assessment Appeals Commission. On June 10, 1981, the Assessment Appeals Commission reversed the Anderson County Board of Equalization, holding that Union Carbide had no taxable interest in the Y–12 Plant.

Anderson County appealed this ruling to the State Board of Equalization. On January 8, 1982, in a 4–3 decision, the State Board reversed the decision of the Assessment Appeals Commission and found that, under Tennessee law, Carbide was the owner of a real property interest in the Y–12 Plant.

Union Carbide sought review of the State Board's ruling in the Chancery Court for Davidson County. On February 2, 1983, the chancellor affirmed the decision of the State Board of Equalization and found that Carbide enjoyed two significant rights in the Y–12 Plant: the right to use it and the right to enter or leave it.

While the case was pending in the chancery court, the United States initiated a second declaratory judgment action in the United States District Court for the Eastern District of Tennessee, seeking to invalidate the tax assessment imposed against Union Carbide. The district court found that Union Carbide's pending parallel action in chancery court related to important and unsettled matters of state law. *United States v. Anderson County, Tennessee,* 547 F.Supp. 18, 19 (E.D.Tenn.1982), *rev'd,* 705 F.2d 184 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 548, 78 L.Ed.2d 722 (1983). Accordingly, on April 15, 1982, the district court invoked the doctrine of abstention and dismissed the government's federal court action. 547 F.Supp. at 20.

The United States appealed the dismissal to this Court. This Court determined that abstention was inappropriate because there were no unsettled questions of Tennessee law as the relevant statutes were "clear in imposing an ad valorem tax on real property interests and need no judicial construction." 705 F.2d at 187. Further, this Court noted that the unsettled question before the district court was "whether the contractual relationship between Union Carbide and the United States conveyed to Union Carbide *any* real property interest in the Y–12 Plant" and that the "interpreta-

tion of a contract wherein the United States is a party is a *federal issue."* 705 F.2d at 187 (emphasis in the original). Accordingly, on April 20, 1983, this Court reversed and remanded the case to the district court.

Thereafter, on November 9, 1983, the district court entered an order and opinion granting summary judgment in favor of the United States. *United States v. Anderson County, Tennessee,* 575 F.Supp. 574 (E.D.Tenn.1983). In granting judgment in favor of the government, the district court held that the contract between the United States and Union Carbide did not grant Carbide a leasehold or other traditional real property interest in the Y–12 Plant. *See* 575 F.Supp. at 578. Rather, the district court was convinced that Union Carbide's interest only amounted to a "mere license" to use the Y–12 Plant in fulfilling its contract with the government. *Id.* Further, the district court reasoned that the Tennessee statute was only designed to tax "that which is traditionally defined as an interest in real property." Thus, the court concluded that Anderson County could not tax Union Carbide under the Tennessee *ad valorem* real property tax statute, since, under Tennessee law, Carbide's interest in the Y–12 Plant was not real property. *Id.*

Anderson County now appeals the November 9, 1983 decision of the district court. However, subsequent to the district court's decision, two important opinions were filed by Tennessee appellate courts in Union Carbide's parallel state court litigation. On December 22, 1983, the Tennessee Court of Appeals held that Union Carbide's right to use, enter and leave the Y–12 Plant is not a taxable interest under Tennessee Code Annotation Section 67–5–502(6).[1] *Union Carbide Corp. v. Alexan-*

*der,* slip op. at 9 (Tenn.Ct.App. Dec. 22, 1983), *aff'd,* 679 S.W.2d 938 (Tenn.1984).

The Court of Appeals concluded that it was bound by the district court's finding that the contract granted a license to Union Carbide, since the interpretation of a contract to which the United States is a party is a federal question. The Court of Appeals, however, recognized that it was not bound by the district court's finding that the interest of Union Carbide was not taxable, since the state courts of Tennessee are the ultimate interpreters of Tennessee statutes. *Id.* at 6. Nevertheless, the Court of Appeals agreed with the district court that the interest was not taxable. The Court of Appeals stated:

> [W]e are unable to find any instance in which a property tax has been imposed unless the entity being taxed had some incident of ownership traditionally recognized as valid under the law. The mere use by Carbide of the real property for purposes of performing the contract does not amount to an incident of ownership.

*Id.* at 9. Thus, the Court of Appeals, holding that the interest of Carbide was not taxable, reversed the decision of the chancellor and the State Board of Equalization and affirmed the decision of the Assessment Appeals Commission.

Subsequently, on November 5, 1984, the Tennessee Supreme Court affirmed the decision of the Court of Appeals. *Union Carbide Corp. v. Alexander,* 679 S.W.2d 938 (Tenn.1984). In a well reasoned opinion, the Tennessee Supreme Court held as a matter of state law:

> We do not believe that the right to use and the right to enter and leave are sufficient to allow Anderson County to claim that Carbide has a real property interest in the Y–12 Plant.... Carbide

---

1. This statute provides:
   The function of assessment shall be as follows, to wit:
   . . . .
   (6) All mineral interests and all other interests of whatsoever character, not defined as products of the soil, in real property, including the interest which the lessee may have in and to the improvements erected upon land

where the fee, reversion, or remainder therein is exempt to the owner, and which said interest or interests is or are owned separate from the general freehold, shall be assessed to the owner thereof, separately from the other interests in such real estate, which other interests shall be assessed to the owner thereof, all of which shall be assessed as real property.

has no interest under the contract that it can sell, lease, or otherwise transfer. The mere use by Carbide of the real property for purposes of performing the contract does not amount to an incident of ownership.

679 S.W.2d at 940–41. Further, the Tennessee Supreme Court noted:

Defendants [Anderson County] maintain that Tennessee's ad valorem property tax statutes, T.C.A. § 67–5–501 et seq., place a tax on possessory interests in real estate like those enjoyed by Union Carbide. We cannot agree.... Without some clear indication of legislative intent to the contrary, we are unable to say Carbide has a taxable interest in the Y–12 Plant under T.C.A. § 67–5–501 et seq.

679 S.W.2d at 942.

### DISCUSSION

Having developed the extensive history of the prior litigation in this matter, it would seem that subsequent to the decision of the Tennessee Supreme Court there is relatively little left for this Court to decide. In essence, we understand Anderson County to present three arguments for reversal:

1) The district court's decision should be reversed because the court failed to recognize that, as a matter of Tennessee law, the rights conveyed to Union Carbide pursuant to its federal management contract constituted a real property interest;

2) The district court's decision should be reversed because the court failed to recognize that, as a matter of Tennessee law, this alleged real property interest was taxable;

3) The district court's decision should be reversed because Union Carbide's declaration, in a proceeding before the California Franchise Tax Board and State Board of Equalization, that it has exclusive possession and use of the Y–12 Plant was an admission chargeable against the United States which effectively undermines the rationale of the decision.

■ We address first the argument that under Tennessee law Union Carbide's use

and possession of the Y–12 Plant constitutes a real property interest. As was discussed above, the Tennessee Supreme Court has definitively ruled that, under Tennessee law, Union Carbide does not have a real property interest in the Y–12 Plant. *See Union Carbide Corp. v. Alexander*, 679 S.W.2d at 940–41 ("We do not believe that the right to use and the right to enter and leave are sufficient to allow Anderson County to claim that Carbide has a real property interest in the Y–12 Plant."). Further, in reaching this decision, the Tennessee Supreme Court made it clear that this ruling was based upon its assessment of the interest Carbide had in the use of the Y–12 Plant, and not the district court's alleged misapplication of common law concepts. 679 S.W.2d at 941 ("Whether or not Carbide has a taxable interest is not dependent on the common law label that we attach to this interest.").

■ Under the *Erie* doctrine, a federal court sitting in diversity is obligated to apply the substantive law of the forum state. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Further, "until such time as a case is no longer *sub judice*, the duty rests upon federal courts to apply state law ... in accordance with the then controlling decision of the highest state court." *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941). Thus we find no merit in the argument of Anderson County concerning Carbide's alleged real property interest in the Y–12 Plant.

■ Next, we address the argument that under Tennessee law Union Carbide's alleged real property interest is taxable. As was also discussed above, the Tennessee Supreme Court has ruled that Anderson County cannot tax Carbide's interest in the Y–12 Plant under the current statute. *Union Carbide Corp. v. Alexander*, 679 S.W.2d at 942 ("Without some clear indication of legislative intent to the contrary, we are unable to say Carbide has a taxable interest in the Y–12 Plant under T.C.A.

§ 67–5–501 et seq."). Since this ruling on state law is also binding on this Court, we find no merit in the argument of Anderson County concerning the taxability of Carbide's interest in the Y–12 Plant.

■ Last, we address the argument that Union Carbide's claim, in a California state franchise tax proceeding, of exclusive use and possession of the Y-12 Plant is an admission chargeable against the United States, which so undermines the reasoning of the district court as to require reversal of its decision. Since this argument is founded upon recent developments which did not come to the attention of the parties until after the pleadings for this appeal had been submitted, we will treat this argument in detail.[2] In essence, Anderson County contends: that the central issue before the district court was whether Union Carbide was entitled to exclusive possession of the Y-12 Plant; that the district court's conclusion that Carbide did not have a taxable real property interest was premised upon the finding of a lack of exclusive possession; that this finding was clearly erroneous as evidenced by Carbide's declaration to the California Franchise Tax Board and State Board of Equalization that it had exclusive use and possession of the property; that Carbide's declaration is an admission chargeable against the United States and thus admissible in this action; and, therefore, this Court should reverse the decision of the district court, or at least remand the case to the district court for consideration of this evidence. We do not agree.

Assuming, *arguendo*, the United States could be bound by Carbide's declaration of exclusive use and possession before the California taxing authorities, *cf. Krebs Pigment & Chemical Co. v. Sheridan*, 79 F.2d 479, 480 (3d Cir.1935), we find that this statement simply does not undermine the holding of the district court or the Tennessee Supreme Court that Carbide's interest in the Y–12 Plant is not properly taxable under the Tennessee *ad valorem* real property tax statute. Contrary to Anderson County's reading of the district court's opinion, the critical issue in this entire litigation has always been whether Union Carbide owns an interest in the real property at the Y–12 Plant separate from the ownership of the United States. *Union Carbide Corp. v. Alexander*, 679 S.W.2d at 939; *accord United States v. Anderson County, Tennessee*, 575 F.Supp. at 575 (the question before the court is "whether the [c]ontract conveyed to Union Carbide any real property interest in the Y–12 facility"). Subsequent to the district court's decision, the Tennessee Supreme Court parsed through the common law labels and determined that the interest represented by Carbide's use of the Y–12 Plant did not amount to an incident of ownership. 679 S.W.2d at 941. Further, the Tennessee Supreme Court determined that the interest Carbide had in the Y–12 Plant was not properly taxable under the relevant Tennessee statute. 679 S.W.2d at 942.

Given these definitive rulings by the Tennessee Supreme Court on the application of Tennessee law to the precise question at bar, the proceedings or pleadings before the California Franchise Tax Board are simply not material. Thus, we find no merit in the argument of Anderson County concerning the effect of Union Carbide's claim in California to exclusive use and possession of the Y–12 Plant.

## CONCLUSION

■ It is an established principle of law that a reviewing court can sustain the judgment of a lower court on any ground that

---

**2.** On December 20, 1984, counsel for Anderson County submitted, by mail, a Supplemental Statement for Appellants. This supplemental statement was duly filed on December 26, 1984, and transmitted to the panel members prior to the oral argument of this case. This supplemental statement has been the subject of various posthearing motions filed by Anderson County.

*E.g.,* Appellant's Motion for Judicial Notice (filed Jan. 18, 1985). This Court has denied those posthearing motions. However, since the December 20 supplemental statement is a part of the record before us, the Court will address the relevant portion of Anderson County's statement as a citation to supplemental authorities. *See* Fed.R.App.P. 28(j).

finds support in the record. *See Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957); *Scivally v. Time Insurance Co.,* 724 F.2d 101, 103 (10th Cir.1983); *Stockton v. Lucas,* 482 F.2d 979, 985 (Temp.Ct.App.1973). Given that this Court has available to it the controlling decision of the Tennessee Supreme Court on the issues of Tennessee law raised by this appeal, we expressly base our affirmance on the decision of that court. Accordingly, the judgment of the Honorable Robert L. Taylor of the United States District Court for the Eastern District of Tennessee is hereby affirmed.